# 17-1140(L), 17-1693

IN THE

# United States Court of Appeals
## FOR THE SECOND CIRCUIT

UNITED STATES OF AMERICA,

*Appellee,*

v.

Nico Burrell, AKA Zico Nico, Douglas McLarty, AKA Q-Don, AKA Q-Dizzy, Martin Mitchell, AKA Tyliek, Donque Tyrell, AKA Polo Rell, Gerard Bass, AKA Roddo, Domnick Sherland, AKA D-Nick, Barffour Abeberse, AKA Duce Bigga, Mashud Yoda, AKA Papa Ola, Anderson Ross, AKA Boogy, AKA Boogy Boo, AKA Ray Allen, Jr., Anthony King, AKA Ant-Dog, Mark Williams, AKA Spangler, AKA Markie Bossin, Quaysean Cannonier, AKA Tic-Tic, Tayquan Tucker, AKA Chicken, AKA Chickenita, William Reid, AKA Uptown Will, Marlon Roberts, AKA Fetti, Abdullah Yoda, DBA Dellah, Kenneth Ruggs, AKA Money Making Kenny, Calvin Ruggs, Fabian Morrison, AKA Fabo, Shaquille Dewar, AKA Shaq Doe, Desean Bennett, AKA Doola, Jafar Borden, AKA Jaffy, Jose Rodriguez, AKA Hov, Shavon Wright, AKA Bhippy, AKA Yung Bhippy, Rasheid Butler, AKA Rah, Brian Richards, AKA B-Rich, Devante Joseph, AKA Wiz, Stephan Clarke, James Pilgrim, AKA Jizzle, Michelle Jemison, AKA Pebbles, Ivanjoel Aryeetey, AKA Ijoe, AKA Ivan, Jamal Blair, AKA Fish, Durell Guy, Hakeem Campbell, AKA Ocky, AKA Ackee, Richard Phillips, AKA G-Mack, Rushaun Brown, AKA Boobie, Michael Francis, AKA Mikey Bandz, Tyrone Gray, Lamar Francis, AKA Lammy, AKA Andrew Blacks, Shane Bennett, AKA Fattah, David Jones, Ricardo Stewart, AKA Cardo, Dante Plummer, AKA Tae, Joel Hargrove, AKA Flow, Shawn Reid, AKA Sama, AKA Sama Lama, Bradley Wilson, AKA Broadway, Robert Feliciano, Dante Stephens, AKA Jibba, Carletto Allen, AKA Joker, Shaquille John, AKA Poppy, Okeifa John, AKA Ratty, Michael Redley, AKA Mikey, AKA Jones, Albert Amponsah, AKA Jungle, Richard Montague, AKA Spanks, Anthony Letterio, AKA Yay, Rai Thomas, AKA Ritch, Javone Pearce, AKA Jevy, Shanice John, Dominique Bass, AKA Domo, Ricardo Burgess, AKA Zilla, Daquan Reid

*Defendants*,

-----------------------------------------------

Robert Haughton, AKA Duke,
Oneil Dasilva, AKA Soxx, AKA Bobby Soxx,

*Defendants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK AT NEW YORK CITY

## OPENING BREIF FOR APPELLANT ROBERT HAUGHTON
## PURSUANT TO *ANDERS V. CALIFORNIA*, 386 U.S. 738 (1967)

### COUNSEL LISTED ON BACK COVER

LANTAGNE LEGAL PRINTING 801 East Main Street Suite 100 Richmond, Virginia 23219 (804) 644-0477
A Division of Lantagne Duplicating Services

# 17-1140(L), 17-1693

Michael S. Schachter
WILLKIE FARR &
 GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019-6099
212-728-8102

*Counsel for Defendant-Appellant*
*Robert Haughton*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... iii

JURISDICTIONAL STATEMENT ................................................................ 1

STATEMENT OF ISSUES ON APPEAL ...................................................... 1

STATEMENT OF THE CASE....................................................................... 1

STATEMENT OF FACTS ............................................................................. 2

    A.    The Offense ...................................................................... 2

    B.    Proceedings in the District Court ..................................... 3

    C.    Appellant's Guilty Plea ................................................... 5

    D.    The Presentence Report .................................................... 9

    E.    Sentencing Memoranda .................................................. 10

    F.    The Sentencing Proceeding and Judgment ..................... 12

ARGUMENT ............................................................................................... 15

    I.    THERE IS NO NON-FRIVOLOUS BASIS TO CONTEST THE
          DISTRICT COURT'S SENTENCE, WHICH WAS
          SUBSTANTIVELY AND PROCEDURALLY REASONABLE .......... 16

          a)    The Imprisonment Component of Appellant's Sentence was
                Reasonable ................................................................. 16

                1.    The Imprisonment Component of Appellant's Sentence
                      was Procedurally Reasonable ............................. 16

                2.    The Imprisonment Component of Appellant's Sentence
                      was Substantively Reasonable ............................ 17

b) The Non-Imprisonment Component of Appellant's Sentence was Reasonable ...............................................................................22

    1. The Non- Imprisonment Component of Appellant's Sentence was Procedurally Reasonable ...............................22

    2. The Non-Imprisonment Component of Appellant's Sentence Was Substantively Reasonable ...........................23

CONCLUSION .......................................................................................26

CERTIFICATE OF COMPLIANCE ....................................................27

CERTIFICATE OF SERVICE .............................................................28

# TABLE OF AUTHORITIES

## CASES

*Anders v. California*,
    368 U.S. 738 (1967)..............................................................................2, 15, 26

*Kimbrough v. United States*,
    552 U.S. 85 (2007)..........................................................................................21

*Nell v. James*,
    811 F.2d 100 (2d Cir. 1987) .........................................................................15

*United States v. Cavera*,
    550 F.3d 180 (2d Cir. 2008) ...................................................................19, 24

*United States v. Crone*,
    343 F. App'x 688 (2d Cir. 2009)............................................................16, 17

*United States v. Danzi*,
    No. 09-5171-CR, 2011 WL 605700 (2d Cir. 2011) ......................................23

*United States v. Danzi*,
    414 F. App'x 356 (2d Cir. 2011).....................................................................18

*United States v. Garcia-De La Rosa*,
    832 F.3d 128 (2d Cir. 2016) ...........................................................................18

*United States v. Gill*,
    523 F.3d 107 (2d Cir. 2008) ...........................................................................24

*United States v. Johnson*,
    567 F.3d 40 (2d Cir. 2009) .............................................................................18

*United States v. Lyle*,
    856 F.3d 191 (2d Cir. 2017) ...........................................................................18

*United States v. Pena*,
    394 F. App'x 804 (2d Cir. 2010)........................................................19, 23, 24

*United States v. Perez-Frias*,
    636 F.3d 39 (2d Cir. 2011) .......................................................................20, 21

*United States v. Shyne*,
    391 F. App'x 959 (2d Cir. 2010).....................................................................24

*United States v. Sindima*,
    488 F.3d 81 (2d Cir. 2007) ............................................................................16

*United States v. Soto*,
    Nos. 08-0654-CR, 08-0706-CR (Con), 2009 WL 765015 (2d Cir. Mar.
    25, 2009) .......................................................................................................20

*United States v. Whitley*,
    503 F.3d 74 (2d Cir. 2007) ..............................................................16, 19, 24

*United States v. Wilson*,
    657 F. App'x 24 (2d Cir. 2016)................................................................18, 21

## STATUTES

18 U.S.C. § 2 ......................................................................................................1
18 U.S.C. § 1962(d) .......................................................................................1, 4
18 U.S.C. § 3553(a) ...................................................................................*Passim*
18 U.S.C. § 3013...............................................................................................23
18 U.S.C. § 3571(b) ..........................................................................................23
18 U.S.C. § 3583(b)(2)......................................................................................23
18 U.S.C. § 924(c)(1)(A)(iii) .............................................................................1
18 U.S.C. § 924(c)(2).........................................................................................1
21 U.S.C. § 846..................................................................................................1
21 U.S.C. § 860..................................................................................................1

## UNITED STATES SENTENCING GUIDELINES

U.S.S.G. § 2D1.1(c)(8) ...................................................................17

U.S.S.G. § 2E1.1 .............................................................................5

U.S.S.G. § 2E 1.1(a)(1), (a)(2) ......................................................16

U.S.S.G. § 201.1(a)(5) ..................................................................17

U.S.S.G. § 3E1.1 .............................................................................5

U.S.S.G. § 4A1.2(d)(2)(A) ............................................................10

U.S.S.G. § 4A1.2(d)(2)(B) ............................................................10

U.S.S.G. § 5D1.2(a)(2) ..................................................................23

U.S.S.G. § 5E1.2(c)(3) ..................................................................23

## JURISDICTIONAL STATEMENT

The appeal in this action was taken from a Judgment entered on April 4, 2017 in the United States District Court for the Southern District of New York (Hon. Alison J. Nathan, U.S.D.J.). (JA-139-145.) The District Court had subject matter jurisdiction, pursuant to Section 3231 of Title 18 of the United States Code, because the action was a criminal case alleging violations of 18 U.S.C. § 1962(d), 21 U.S.C. § 846, 21 U.S.C. § 860, 18 U.S.C. § 2, and 18 U.S.C. §§ 924(c)(1)(A)(iii), 924(c)(2).

This Court has appellate jurisdiction pursuant to Section 1291 of Title 28 of the United States Code, which provides that the Courts of Appeals have jurisdiction over final decisions of the District Courts of the United States.

## STATEMENT OF ISSUES ON APPEAL

I. Whether the District Court's sentence was reasonable.

## STATEMENT OF THE CASE

Appellant Robert Haughton is appealing from a judgment of the United States District Court for the Southern District of New York, rendered on April 4, 2017. (JA-139-145.) The District Court's judgment rested on Appellant's conviction upon his plea of guilty for participation in a racketeering conspiracy in violation of 18 U.S.C. § 1962(d). (JA-80-83, 139.) On April 4, 2017, the District Court sentenced Appellant to a prison term of 60 months, with supervised release

of three years, and ordered Appellant to pay a special assessment of $100. (JA-139-145.) A Notice of Appeal was timely filed on April 20, 2017, pursuant to Rule 4(b) of the Federal Rules of Appellate Procedure. (JA-146.) Counsel for Appellant hereby moves for permission to be relieved as counsel pursuant to *Anders v. California*, 368 U.S. 738 (1967) and files this brief in support of such relief.

## STATEMENT OF FACTS

### A. The Offense

The Government has alleged that in association with a criminal enterprise known as the Big Money Bosses ("BMB"), Appellant engaged in a conspiracy and course of conduct that involved selling narcotics, principally crack cocaine, in the Bronx, New York. (JA-35-44.) Due to several periods of incarceration on unrelated charges, however, Appellant was only directly involved with the BMB conspiracy for approximately 10 to 15 months during the period of April 9, 2013 through April 12, 2016. (JA-90.) As alleged in the Indictment, BMB's narcotics trafficking activity – which included the sale crack cocaine, marijuana, and prescription pills – was based in the vicinity of White Plains Road and 224th Street, which was referred to by members of BMB as the "Forts." (JA-36-37.)

The Government alleged that as an associate of BMB, Appellant sold crack at BMB's "Forts" location. (JA-35-44, 117.) According to the Government, Appellant bragged frequently about his involvement with BMB on the social media platform, Facebook, including, referencing BMB leader Nico Burrell; selling narcotics; using violence in defense of BMB associates; and referencing BMB's norm against cooperation with law enforcement. (JA-114.) The Government's sentencing submission referenced several other instances of Appellant's involvement with BMB: (i) on June 15, 2014, Appellant and another BMB associate and co-defendant were arrested at the "Forts" after being observed by law enforcement officers with narcotics (JA-117); (ii) on July 10, 2013, Appellant was arrested near Bronxwood Avenue and 221st Street after selling controlled substances to an undercover police officer (JA-117); and (iii) on June 26, 2013, Appellant was arrested in the vicinity of White Plains Road and 227th Street, after which a search of his person revealed that he was carrying narcotics. (JA-117.)

## B.    Proceedings in the District Court

Appellant was charged in Counts One through Three of the Indictment on April 12, 2016. (JA-3-4.) On April 27, 2016, Appellant, represented by counsel, was arraigned before the District Court and entered a plea of not guilty. On August 11, 2016, based on the fact that Appellant had been underage or incarcerated for much of the conspiracy period of 2007 through 2016 alleged in the

Indictment – leaving only a maximum of 15 months between his 18th birthday and being charged in the Indictment in which he could actually have been an active participant in the BMB enterprise – the Government, at the urging of counsel for Appellant, made a plea offer to Appellant, allowing him to plead guilty to Count One of the Indictment. This plea offer proposed a Federal Sentencing Guidelines ("U.S.S.G." or "Guidelines") range of 46 to 57 months' imprisonment, corresponding to an offense level of 21 and a criminal history category of III. (Aug. 11, 2016 Plea Agreement, at 2-3.)

On September 23, 2016, Appellant entered into a plea agreement with the Government based on these terms (the "Plea Agreement"). (Aug. 11, 2016 Plea Agreement, at 6.) The Plea Agreement outlined the charges to which Appellant would plead guilty and the potential penalties, including the minimum and maximum terms of imprisonment, the supervised release terms, the fine range, and the mandatory nature of the special assessment. (Aug. 11, 2016 Plea Agreement, at 1.) The Plea Agreement specified that Appellant's guilty plea to Count One, 18 U.S.C. § 1962(d), Racketeering Conspiracy, carried a potential sentence of up to 20 years' imprisonment. (Aug. 11, 2016 Plea Agreement, at 1.) In addition, the Plea Agreement advised Appellant of the maximum supervised release terms, the maximum fines, and the mandatory special assessments. (Aug. 11, 2016 Plea Agreement, at 1.)

Within the Plea Agreement, the parties agreed to a stipulated guidelines range of the appropriate offense level and criminal history category, as follows:

<u>Racketeering Conspiracy</u>

        Base Offense Level, U.S.S.G. §§ 2E1.1; 2D1.1 ................................24

        Reduction for Acceptance of Reponsibility, U.S.S.G. § 3E1.1 .......... -3

        _____

        **NET APPLICABLE OFFENSE LEVEL.......................................21**

(Aug. 11, 2016 Plea Agreement, at 2.)

The parties stipulated that the correct offense level was 21, and that Appellant was in criminal history category III, yielding a Guidelines range of 46 to 57 months' imprisonment. (Aug. 11, 2016 Plea Agreement, at 3.) The Plea Agreement contained a waiver of Appellant's right to appeal or otherwise challenge his conviction or sentence if the Court imposed a term of imprisonment within or below the stipulated Guidelines range. (Aug. 11, 2016 Plea Agreement, at 4-5.)

## C.    **Appellant's Guilty Plea**

On September 23, 2016, Appellant and counsel appeared before the Honorable Alison J. Nathan for the purpose of entering a guilty plea pursuant to the Plea Agreement. (JA-15, 63.) At that hearing, Judge Nathan placed Appellant

under oath. (JA-65.) In response to questions from Judge Nathan, Appellant answered that he was 21 years of age; had completed school up through the eighth grade; was currently taking medication called Remeron for depression but that this medication did not affect his competence to plead guilty; and that his mind was clear and that he could understand everything happening in court. (JA-65-66.) Appellant further stated that he had received a copy of the Indictment, that he had discussed the Indictment and any possible defenses to the charges therein with his counsel, that his counsel had explained to him the consequences of pleading guilty, and that he was satisfied with his representation by counsel. (JA-67.)

Judge Nathan then asked Appellant a series of detailed questions relating to the constitutional rights that he would be giving up by pleading guilty. (JA-67-71.) Appellant acknowledged that he understood that he had the right to a speedy and public trial by jury (JA-68); that at such a trial, the burden of proof would be on the Government, he would be presumed innocent, the Government would have to prove guilt beyond a reasonable doubt, he would have the right to confront witnesses, to have his attorney cross-examine the witnesses, to have his attorney present evidence on his behalf, and to compel witnesses to testify; that he had the right to have a lawyer present during the trial to assist him; and that he would be provided with a lawyer free of charge if he could not afford one. (JA-68-69.)

Appellant acknowledged that he understood that at a trial, he would have the right to testify, but could not be compelled to do so. (JA-69.) Appellant was advised by Judge Nathan that if he pled guilty, there would be no trial. (JA-70.) Appellant acknowledged that he understood the maximum penalties applicable to the offense in question (JA-72-73); that by pleading guilty he would lose certain civil rights, including, the right to vote, hold public office, serve on a jury, or possess a firearm (JA-74); and that any sentence imposed in the instant cause could be run consecutively with a sentence imposed in a criminal proceeding in New York state court then pending against Appellant. (JA-74-75.) Appellant stated that he understood he was giving up these rights. (JA-75.)

Judge Nathan made clear that only she would determine Appellant's sentence and that no one else could give Appellant any assurance or promise as to what that sentence would be, and that he would still be bound by his guilty plea, even if given a sentence greater than that agreed to in the Plea Agreement. (JA-75-76.) Appellant stated that he understood this. (JA-76.) Judge Nathan then reviewed the Plea Agreement with Appellant, satisfying herself that Appellant understood its terms. (JA-76-79.) The Plea Agreement was shown to Appellant, who acknowledged that he had read it, discussed it with his lawyer, understood it, and signed it. (JA-77.) Appellant acknowledged that he understood that while the Guidelines range stipulated to in the Plea Agreement was binding on himself and

- 7 -

on the Government, it was not binding on the District Court, and that he would not be permitted to withdraw his guilty plea even if sentenced above the stipulated Guidelines range. (JA-78.) Appellant further acknowledged that in the Plea Agreement he was waiving any right to appeal a sentence of 57 months' imprisonment or less. (JA-78-79.) Finally, Judge Nathan confirmed that the Plea Agreement constituted Appellant's complete and total understanding with the Government; that the plea was made voluntarily; that no one had threatened, forced, or made any promise to induce Appellant to enter into the Plea Agreement; and that no one had made Appellant any promise as to what his sentence would be. (JA-78-79.)

Appellant then read a prepared allocution in which he admitted the essential elements of the charge (JA-80) and then confirmed to Judge Nathan that he understood what he had read and accepted those words as his own. (JA-80.) The Government confirmed that the allocution was sufficient, (JA-81) and proffered the evidence that it would have introduced had Appellant proceeded to trial. (JA-81-82.) Appellant then advised the Court that he wished to plead guilty. (JA-83.) Judge Nathan found Appellant's plea to be knowing and voluntary, found that there was as factual basis for that plea, and accepted Appellant's plea. (JA-83.)

**D.** **The Presentence Report**

On December 16, 2016 the United States District Court Southern District of New York Probation Office ("Probation") issued its final Presentence Investigative Report ("PSR") on Appellant. In addition to providing details of the offense to which Appellant pleaded guilty, (PSR, at ¶¶ 19-22) the PSR also provided details of Appellant's background for Judge Nathan to utilize in determining Appellant's sentence. (PSR, at ¶¶ 36-61.) The PSR calculated the Guidelines range as applicable to Appellant, (PSR, at 30) but those calculations differed substantially from those to which the parties had stipulated in the Plea Agreement. (Aug. 11, 2016 Plea Agreement, at 2-3.)

Specifically, Probation disagreed with the Plea Agreement's calculation of Appellant's criminal history in that the Plea Agreement had failed to account for three youthful offender sentences (PSR, at ¶¶ 37, 40, 42) that were not listed on Appellant's Criminal Repository, and which as a result were unknown to either the Government or to Appellant's counsel at the time the Plea Agreement was entered into. The first such conviction, for petit larceny, to which Appellant was sentenced to three years' probation based on a plea of guilty on October 13, 2011 in White Plains City Court, resulted in one additional criminal history point. (PSR, at ¶ 37.) The second such conviction, for two counts of second degree burglary, to which Appellant was sentenced to one year of imprisonment based on

a plea of guilty on March 13, 2014 in Bronx County Supreme Court, resulted in two additional criminal history points.  (PSR, at ¶ 40.)  The third such conviction, for second degree burglary, to which Appellant was sentenced to one year of imprisonment based on a plea of guilty, also on March 13, 2014 in Bronx County Supreme Court, resulted in two additional criminal history points.  (PSR, at ¶ 42.) Under § 4A1.2 of the Guidelines, two criminal history points are added for each juvenile offense resulting in a sentence of at least 60 days' imprisonment if the defendant was released from such confinement within five years of initiation of the instant offense.  *See* U.S.S.G. § 4A1.2(d)(2)(A).  Additionally, one criminal history point is added for each juvenile sentence imposed within five years of the defendant's initiation of the instant offense if not covered by subsection (A) above. *See* U.S.S.G. § 4A1.2(d)(2)(B).  Thus, the three additional offenses carried five additional criminal history points, thereby increasing Appellant's criminal history category from III to V.  This resulted in a higher applicable Guidelines range of 70 to 87 months' imprisonment.  (PSR, at 30.)  Probation recommended a sentence of 80 months' imprisonment and two years' supervised release.  (PSR, at 30.)

### E.    Sentencing Memoranda

On March 28, 2017, Appellant's counsel filed a Sentencing Memorandum on Appellant's behalf.  (Dkt. 1157.)  In that memorandum, Appellant's Counsel discussed the sentencing framework of 18 U.S.C. § 3553(a),

specifically drawing the court's attention to several factors, including: (i) Appellant's deeply fractured and unstable upbringing, which involved the traumatic deportation of both of his parents by the time he was 10 years old (JA-87-90); and (ii) that due to long periods of incarceration for unrelated offenses, Appellant's actual participation in the conspiracy was relatively minor, and for a far more circumscribed period than a plain reading of the Indictment would suggest. (JA-90-91.) Appellant's sentencing memorandum included several letters from Appellant's siblings, as well as a letter from Appellant himself. (JA-93-109.) Appellant's sentencing memorandum also noted the discrepancy between the Guidelines range in the Plea Agreement and the Guidelines range in the PSR, and urged the court to impose a sentence within the 46 to 57 month Guidelines range stipulated to by the parties in the Plea Agreement. (JA-86, 91.)

On March 30, 2017, the Government filed a Sentencing Memorandum. (Dkt. 1167.) In that Memorandum, the Government described the activities and structure of the BMB enterprise generally, (JA-113-116) as well as Appellant's role within it, including several BMB-related arrests and Appellant's own Facebook posts referring to his association with the gang. (JA-117.) The Government discussed Appellant's criminal history and the discrepancy between the Guidelines range stipulated to by the parties, and the Guidelines range in the

PSR.  (JA-111, 118-119.)  The Government argued that a sentence towards the higher end of the 46 to 57 month range was appropriate.  (JA-111.)

**F.    The Sentencing Proceeding and Judgment**

On April 4, 2017, the parties appeared before Judge Nathan for sentencing.  (JA-25, 122.)  Judge Nathan confirmed that Appellant had reviewed the PSR and discussed it with his counsel.  (JA-124.)  Counsel for Appellant and for the Government then confirmed that there was no dispute between the parties as to the accuracy of the PSR's factual findings.  (JA-124.)

Turning to the calculation of the Sentencing Guidelines, Judge Nathan stated that although she was not required to follow the Guidelines, she was required to consider them.  (JA-125.)  Judge Nathan noted the discrepancy between the Guidelines calculation in the Plea Agreement and that in the PSR, and confirmed that there were no objections as to the offense level of 21 as applicable to Appellant.  (JA-125.)  The District Court further confirmed that the discrepancy arose from the calculation of Appellant's criminal history category, based on information contained in paragraphs 37, 40, and 42 of the PSR.  (JA-125-126.)  The parties confirmed this was correct, and that taking into account the information in those paragraphs, there were no objections to the calculation of the Guidelines in the PSR.  (JA-126.)  Judge Nathan then calculated Appellant's criminal history

category as V, noted that Probation recommended a sentence of 80 months'
imprisonment, confirmed that neither party was seeking a departure within the
Guidelines system, and noted that such a departure was not warranted in any event.
(JA-126-127.)

At this point, counsel for the Government addressed the District
Court, highlighting Appellant's criminal history, both in connection with, and
unrelated to BMB, and arguing for the imposition of a substantial sentence. (JA-
128.) Next, counsel for Appellant addressed the District Court, highlighting
Appellant's limited actual involvement with the BMB conspiracy (JA-129); the
extraordinary traumatic and difficult circumstances of his upbringing, including his
parents' deportation by the time he was 10 years old (JA-129-130); and finally,
Appellant's loving and supportive family, and the reassurance they could give the
court that Appellant would remain on the right track once released. (JA-130.) In
response to a question from the court, counsel for the Government stated that
Appellant's limited actual involvement with the BMB conspiracy was incorporated
in his lower offense level of 21. (JA-131.) Finally, after being informed by the
Court that he was under no obligation to do so, (JA-131) Appellant himself
addressed the District Court, expressed contrition, and accepted responsibility for
his actions. (JA-131-132.)

Following those statements from the parties, the court imposed its sentence.  (JA-132-138.)  Judge Nathan stated the applicable Guidelines range of 70 to 87 months' imprisonment, and noted the advisory nature of the Guidelines and that she was required to consider the other 18 U.S.C. § 3553(a) factors, which she then enumerated.  (JA-132-133.)  Judge Nathan stated that in imposing Appellant's sentence, she was required to take into account the kinds of sentences available, the Guidelines range, pertinent policy statements, the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offense.  (JA-132-133.)  Judge Nathan further stated that she was required to impose a sentence sufficient but no greater than necessary to comply with the purposes of sentencing.  (JA-133.)

Judge Nathan indicated that she had given substantial thought to the appropriate sentence, and that in light of the seriousness of the crime to which Appellant pled guilty and his association with BMB, a serious sentence was warranted to provide just punishment and deterrence, to promote respect for the law, and to protect the public from further crimes.  (JA-133.)  Judge Nathan further stated that she was troubled by Appellant's criminal history and that his various convictions and periods of incarceration had not sufficiently deterred him from continuing to violate the law.  (JA-134.)  Judge Nathan also noted, however, that

- 14 -

the court was taking into account that Appellant had accepted responsibility and pled guilty to the offense, his upbringing and life's experiences, and his relative level of culpability within the conspiracy.  (JA-134-135.)

For these reasons, the District Court imposed a sentence of 60 months' imprisonment, three years' supervised release, and a $100 special assessment, finding that the sentence was sufficient but not greater than necessary to satisfy the purposes of sentencing.  (JA-135-137.)  The sentence, while higher than the erroneously calculated Guidelines range of 46 to 57 months' imprisonment stipulated to by the parties in the Plea Agreement, was nevertheless 10 months lower than Appellant's actual Guidelines range of 70 to 87 months' imprisonment, as calculated by the PSR and by Judge Nathan.  (Aug. 11, 2016 Plea Agreement, at 2-3; JA-125-126.)

## ARGUMENT

Pursuant to *Anders v. California*, 386 U.S. 738 (1967), court-appointed counsel in a criminal case can be permitted to withdraw as counsel on the grounds that there is no non-frivolous basis for appeal.  Counsel must file a brief establishing that, upon a conscientious examination of the record, the potential issues presented for appeal are without merit and frivolous.  *Nell v. James*, 811 F.2d 100, 103 (2d Cir. 1987).

I.   THERE IS NO NON-FRIVOLOUS BASIS TO CONTEST THE DISTRICT
     COURT'S SENTENCE, WHICH WAS SUBSTANTIVELY AND
     <u>PROCEDURALLY REASONABLE.</u>

> *a)  The Imprisonment Component of Appellant's Sentence was
>      Reasonable.*

An attorney's Anders brief must analyze the procedural and

substantive reasonableness of the sentencing hearing and the sentence imposed.

*United States v. Whitley*, 503 F.3d 74, 76-78 (2d Cir. 2007) (citing *United States v.*

*Sindima*, 488 F.3d 81, 84 (2d Cir. 2007)).  Procedural reasonableness concerns

such factors as whether the district court properly considered the appropriate

Guidelines range along with the other factors outlined in 18 U.S.C. § 3553(a).

*United States v. Crone*, 343 F. App'x 688, 690 (2d Cir. 2009).  Substantive

reasonableness addresses "whether the length of the sentence is reasonable in light

of the factors outlined in 18 U.S.C. § 3553(a)."  *Id.*  Sentences are reviewed for

abuse of discretion and findings of fact are reviewed for clear error.  *Id.*

> *1.  The Imprisonment Component of Appellant's Sentence was
>      Procedurally Reasonable.*

The District Court committed no procedural errors in the

determination of Appellant's sentence of imprisonment.  The racketeering

conspiracy charged in Count One of the Indictment to which Appellant pled guilty

is the greater of 19 or the offense level applicable to the underlying racketeering

activity.  U.S.S.G. §§ 2E 1.1 (a)(1) and (2).  The offense level applicable to

- 16 -

Appellant's participation in the racketeering activity, selling at least 28 grams but less than 112 grams of cocaine base, was 24.  U.S.S.G. §§ 201.1(a)(5) and 2D1.1(c)(8).  The District Court correctly calculated that Appellant was entitled to a two-level reduction for acceptance of responsibility to the Government's satisfaction, and an additional one-level reduction for giving timely notice of his intention to enter a plea of guilty.  (JA-125.)  Judge Nathan was therefore correct in finding that Appellant's offense level was 21.  Based on the information contained in the PSR, Judge Nathan was also correct in identifying Appellant's criminal history category as V.  (JA-125-126.)  Judge Nathan was thus correct in adopting the calculations of the PSR, identifying the applicable Guidelines range as 70 to 87 months' imprisonment.  (JA-126.)  As required, Judge Nathan further acknowledged that she was not bound by this recommended range, and fully considered potentially mitigating circumstances, including Appellant's troubled upbringing, letters of support from his family, and the street-level nature of his involvement with BMB.  (JA-132-135.)  18 U.S.C. § 3553(a).  *United States v. Crone*, 343 F. App'x 688, 690 (2d Cir. 2009).

> ### 2.  *The Imprisonment Component of Appellant's Sentence was Substantively Reasonable.*

A sentence is substantively unreasonable if it "'shock[s] the conscience,' constitutes a 'manifest injustice,' or is otherwise substantively

unreasonable." *United States v. Wilson*, 657 F. App'x 24, 31 (2d Cir. 2016) '(internal citations omitted) (holding below-Guidelines sentence of 144 months' imprisonment for theft of government property substantively reasonable). Additionally, review for substantive unreasonableness is "particularly deferential" and sentences will only be set aside as such "in exceptional cases where the trial court's decision cannot be located within the range of permissible decisions, that is, when sentences are so shockingly high, shockingly low, or otherwise unsupportable as a matter of law." *Id.* (internal citations omitted).

On substantive review, courts examine the length of the sentence imposed. *United States v. Danzi*, 414 F. App'x 356, 357 (2d Cir. 2011) (citing *United States v. Johnson*, 567 F.3d 40, 51 (2d Cir. 2009)). S*ee also, e.g.*, *United States v. Lyle*, 856 F.3d 191, 209 (2d Cir. 2017) (holding below-Guidelines sentence of 144 months' imprisonment not substantively unreasonable in light of defendant's "very unhappy upbringing," and "positive change[s]" on the one hand, and "very serious crime," "long history of drug dealing," and "prior record suggest[ing] that he still continues to be a danger to the community" on the other); *United States v. Garcia–De La Rosa*, 832 F.3d 128, 135 (2d Cir. 2016) (holding above-Guidelines sentence of 60 months' imprisonment for defendant convicted on guilty plea for promotion, management, and facilitation of interstate prostitution trafficking enterprise not substantively unreasonable).

- 18 -

The Second Circuit takes into account "the totality of the circumstances," and defers to the sentencing judge's exercise of discretion, "bearing in mind the institutional advantages of district courts." *United States v. Pena*, 394 F. App'x 804, 806 (2d Cir. 2010). Additionally, this Court will set aside a District Court's substantive ruling "only in exceptional cases where the trial court's decision 'cannot be located within the range of permissible decisions.'" *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008). Upon substantive review, the Second Circuit "'focus[es] [its] attention on the district court's explanation of its sentence in light of the factors detailed in 18 U.S.C. § 3553(a).'" *United States v. Whitley*, 503 F.3d 74, 77 (2d Cir. 2007). Under § 3553(a), in determining what sentence should be imposed, a court must consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established [and recommended by the Sentencing Guidelines] . . .

(5) any pertinent policy statement . . . issued by the Sentencing Commission . . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

In imposing a sentence, courts are not bound by the parties' stipulation as to the applicable Guidelines range in a plea agreement, must independently calculate the applicable Guidelines range, and may sentence a criminal defendant above, below, or within that range. *United States v. Soto*, Nos. 08-0654-CR, 08-0706-CR (Con), 2009 WL 765015, at *1 (2d Cir. Mar. 25, 2009). Furthermore, "'in the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances.' . . . It is therefore difficult to find that a below-Guidelines sentence is unreasonable." *United States v. Perez-Frias*, 636 F.3d 39, 43 (2d Cir. 2011) (internal citations omitted).

Although the District Court's sentence was above the range incorrectly stipulated to by the parties based on incomplete facts in the Plea Agreement, (Aug. 11, 2016 Plea Agreement, at 2-3; JA-125-126) the sentence

imposed was, in fact, 10 months *lower* than the applicable, and correctly calculated, Guidelines range of 70 to 87 months' imprisonment, and was therefore reasonable in light of the factors outlined in 18 U.S.C. § 3553(a). *Perez-Frias*, 636 F.3d at 43 ("in the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'") (citing *Kimbrough v. United States*, 552 U.S. 85, 109 (2007)). *See also United States v. Wilson*, 657 F. App'x 24, 31 (2d Cir. 2016) (holding "[w]hile we do not presume that a Guidelines sentence is necessarily substantively reasonable, that conclusion is warranted in the overwhelming majority of cases.").

In imposing its sentence, the District Court noted Appellant's "background of violence, his criminal history, and his involvement with a violent gang." (JA-135.) The Court also noted the need in this particular case "to consider the relative culpability of the defendant within the overall conspiracy and work to avoid unwarranted sentence disparities here as well as with other defendants who have engaged in comparable conduct." (JA-135.) The Court also noted that it was troubled by Appellant's participation in "gunpoint robberies and [an] armed home invasion," (JA-134) by the fact that participation in the racketeering conspiracy was Appellant's ninth offense, and by the fact that previous sentences of probation

and incarceration had not deterred Appellant from engaging in additional criminal conduct. (JA-134.)

Furthermore, Appellant's base offense level of 24 was based on the fact that Appellant was incarcerated for much of time from his 18th birthday to being charged in the Indictment. (JA-90-91.) Had Appellant proceeded to trial, the Government could have potentially proved that he was responsible for a higher volume of narcotics sales, thereby increasing Appellant's offense level at sentencing. Furthermore, while not charged in the Indictment, the Government presented evidence at sentencing regarding Appellant's commission of several acts of violence, including gunpoint robberies, and a home invasion. (JA-117-118.) Had Appellant gone to trial, and had these violent acts been in furtherance of the BMB conspiracy, this information could also have been presented to a jury. Finally, had Appellant proceeded to trial, he would not have benefited from the three-level decrease resulting from his taking responsibility and timely informing the Government of his intent to plea.

  b) *The Non-Imprisonment Component of Appellant's Sentence was Reasonable.*

   1. *The Non- Imprisonment Component of Appellant's Sentence was Procedurally Reasonable.*

The District Court committed no procedural or substantive errors in determining the non-imprisonment components of Appellant's sentence. The

racketeering conspiracy to which Appellant pled guilty carries a maximum term of three years' supervised release and a Guidelines range of one to three years' supervised release. 18 U.S.C. § 3583(b)(2); U.S.S.G. § 5D1.2(a)(2). It also carries a maximum fine of $250,000, a mandatory special assessment of $100, and a Guidelines range of $15,000 to $200,000. 18 U.S.C. §§ 3571(b), 3013; U.S.S.G. § 5E1.2(c)(3). On April 4, 2017, Judge Nathan sentenced Appellant to a three-year term of supervised release and ordered Appellant to pay a special assessment of $100. (JA-135-137.) The District Court sentenced Appellant to supervised release in accordance with the statutory provisions and within the Guidelines range. (JA-135-136.) Furthermore, the Court treated the Guidelines as discretionary, considered all of the 18 U.S.C. § 3553(a) factors, and adequately explained its chosen sentence. It also imposed the mandatory $100 special assessment. (JA-137.) Accordingly, the District Court committed no procedural errors in calculating the non-imprisonment components of Appellant's sentence. It was thus procedurally reasonable.

2. *The Non-Imprisonment Component of Appellant's Sentence Was Substantively Reasonable.*

On substantive review, this Court will examine the length of the sentence imposed. *United States v. Danzi*, No. 09-5171-CR, 2011 WL 605700, at *1 (2d Cir. 2011); *United States v. Pena*, 394 F. App'x 804, 806 (2d Cir. 2010)

*United States v. Shyne*, 391 F. App'x 959, 961 (2d Cir. 2010). This Court defers to the sentencing judge's exercise of discretion, *Pena*, 394 F. App'x at 806, setting aside a District Court's substantive ruling "only in exceptional cases where the [trial] court's decision 'cannot be located within the range of permissible decisions,'" *Cavera*, 550 F.3d at 189, focusing its attention "on the District Court's explanation of its sentence in light of the factors detailed in 18 U.S.C. § 3553(a)." *Whitley*, 503 F.3d at 77.

Regarding the conditions of supervised release terms, the Second Circuit has recognized that "'courts have broad discretion to tailor conditions of supervised release.'" *United States v. Gill*, 523 F.3d 107, 108 (2d Cir. 2008). A sentencing court may impose "'special conditions of supervised release that are 'reasonably related' to certain statutory factors governing sentencing. . . .'" *Gill*, 523 F.3d at 109. These factors include "'the nature and circumstances of the offense and the history and characteristics of the defendant,' the need 'to afford adequate deterrence to criminal conduct,' and the need 'to protect the public from further crimes of the defendant.'" *Gill*, 523 F.3d at 109 (citing 18 U.S.C. §§ 3553(a)(1), (a)(2)(B), (a)(2)(C)). A "condition of supervised release need only be reasonably related to any one of these factors." *Id*. The District Court imposed certain conditions on Appellant's supervised release, including a special condition

- 24 -

compelling Appellant to participate in a program approved by the U.S. Probation Office that could involve drug and alcohol testing.  (JA-136.)

The District Court's sentence of supervised release was substantively reasonable in light of the factors outlined in 18 U.S.C. § 3553(a).  In imposing its sentence, the District Court considered Appellant's association with BMB, his participation in narcotics trafficking, his criminal history, and his personal history. (JA-133-135.)  The District Court's sentence of supervised release is within the range of permissible sentencing determinations.  The District Court imposed the mandatory $100 special assessment.  (JA-137.)  Furthermore, the special condition of Appellant's supervised release was reasonably related to his lengthy criminal history, his own history of substance abuse, the nature of his offense, the need to adequately deter future criminal conduct, and the need to protect the public from further crimes.  Accordingly, the non-imprisonment components of the District Court's sentence was substantively reasonable.

## CONCLUSION

For the foregoing reasons, counsel respectfully requests that the motion to withdraw as counsel on Appeal pursuant to *Anders v. California*, 386 U.S. 738 (1967), be granted and that Defendant-Appellant Robert Haughton's appeal be dismissed.


Dated:  August 3, 2017                    Respectfully Submitted,


 _/s/ Michael S. Schachter_____
Michael S. Schachter, Esq.
*mschachter@willkie.com*
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 728-8102

*Attorney for Defendant-Appellant Robert Haughton*

## CERTIFICATE OF COMPLIANCE

MICHAEL S. SCHACHTER, hereby declares the following:

This brief contains 5,482 words. This brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font style.

Dated:       August 3, 2017

                          /s/ Michael S. Schachter
                         Michael S. Schachter, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that I have this August 3, 2017, electronically filed this Brief of Appellant using the Court's CM/ECF system which will send notification of such filing to the counsel of Record:

Margaret M. Garnett
Rachel Maimin
UNITED STATES ATTORNEY'S
OFFICE FOR THE SOUTHERN
DISTRICT OF NEW YORK
1 Saint Andrews Plaza
New York, NY 10007

I further certify that I have mailed the forgoing Brief of Appellant, US First Class, Postal Service to Defendant:

Robert Haughton, Inmate No. 17A2173
Altona Correctional Facility
P.O. Box 3000
Altona, New York 12910-2090

/s/ Michael S. Schachter
Michael S. Schachter, Esq.